FILED
SUPERIOR COURT
OF GUAM

2025 JUN -9 PM 2: 46

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| LOURDES A. LEON GUERRERO, *I MAGA'HAGAN GUAHAN*, MOVANT OF GUAM, in her official capacity,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS B. MOYLAN, ATTORNEY GENERAL OF GUAM, in his official capacity, and the OFFICE OF THE ATTORNEY GENERAL OF GUAM,<br><br>Defendant. | CIVIL CASE NO. <u>CV0290-25</u><br><br>**DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTIONS TO DISMISS; PRELIMINARY INJUNCTION** |

Plaintiff Lourdes A. Leon Guerrero, I Maga'hagan Guahan, moves for a preliminary injunction against Defendants Douglas B. Moylan, Attorney General of Guam, and the Office of the Attorney General (OAG) "from taking action to perform on, incur debt on, or utilize public funds to pay for services rendered under the Agreement between the OAG and Tropical Palm Hotel (TPH)" for services related to the Dignity Project. Mem. P. & A. in Supp. Ex Parte Mot. TRO & Prelim. Inj. at 2 (Apr. 25, 2025). Defendants in response move to dismiss this matter for lack of jurisdiction, failure to join an indispensable party, waiver of the right to object, and failure to exhaust administrative remedies. The Court DENIES all four of Defendant's Motions to Dismiss and GRANTS the Governor's Motion for Preliminary Injunction on the basis that she has established a likelihood of success on the merits and the existence of irreparable harm.

## I.    <u>PROCEDURAL BACKGROUND</u>

Governor Leon Guerrero filed this action against Defendants seeking a temporary



restraining order and a preliminary injunction regarding the "Dignity Project." The project intends to utilize funds granted by the Opioid Recovery Advisory Council (ORAC) to contract with a hotel for a twelve-month period to provide one-night stays, meals, showers, and related services to 20 unhoused individuals on a daily basis. Governor Leon Guerrero asserts that after unsuccessfully issuing a Request for Proposal (RFP) and an Initiation for Bid (IFB), Defendants pursued a sole source procurement to find a hotel vendor. *Id.* at 5-6. Defendants entered a contract with TPH, however they did not present this contract to Governor Leon Guerrero for her signature of approval. *Id.* at 7. Governor Leon Guerrero asserts that under 5 GCA § 22601 she must approve all contracts of whatever nature and that without enjoining Defendants she will face the irreparable harm of having her "right to review and decide whether to approve" contracts violated. *Id.* at 10. In response, Defendants argue that the Governor will not face irreparable harm because the only harm she will face is the expenditure of funds, that the AG's Office complied with every aspect of Guam's procurement law, and that the Governor's signature was not required on the procurement contract. Opp'n Mot. TRO at 12, 14 (Apr. 28, 2025).

This matter originally came before the Honorable John C. Terlaje on April 28, 2025, who granted Governor Leon Guerrero's request for a temporary restraining order. Upon reassignment, this Court extended the temporary restraining order until the close of business of May 19, 2025, and set a hearing for the preliminary injunction on May 12, 2025.[1] Order Extending TRO (May 8, 2025). This TRO was again extended per stipulation between the

---

[1] A full discussion of the procedure related to the temporary restraining order and its extension can be found in the Court's May 8, 2025 Order Extending Temporary Restraining Order.



ORIGINAL

parties until the Court came to a final determination on the Motion for Preliminary Injunction and four Motions to Dismiss. Order Renewing Extension of TRO (May 16, 2025).

The Court held the preliminary injunction hearing from May 12 to 15, 2025. The Court heard testimony from AG Moylan, Fred Nishihara (OAG Deputy Attorney General), Thomas Paulino (OAG General Accounting Supervisor), Pilar Carbullido (Guam Customs & Quarantine Agency Officer), Louise C. Rivera (Mayor of Tamuning), and Jessica Toft (Former Assistant AG). Defendants moved to dismiss this case after the Governor rested her case in chief arguing that Governor Leon Guerrero failed to speak about the irreparable harm she would incur. The Court denied this effort from the bench, stating that there were outstanding issues of law that the Court would like more information on which impact the Court's determination of if the Governor has adequately proven irreparable harm and a likelihood of success. The Court then proceeded to hear the four Motions to Dismiss and closing arguments on June 5, 2025.

## II.   FINDINGS OF FACT

The Court recites undisputed facts found during the proceedings and makes further findings of fact by a preponderance of the evidence.

1. Public Law No. 36-064 established the ORAC to provide for the use of dedicated revenue for the treatment and prevention of opioid use disorders and co-occurring disorders. 5 GCA § 221701, *et seq.* The ORAC consists of 11 members including: the AG as the non-voting chairperson, two individuals appointed by the Governor, and a member each from the Guam Behavioral Health and Wellness Center, the Department of Public Health and Social Services, and the Guam Memorial Hospital Authority. 5 GCA § 221704; Ex. A; Mem. P. & A. in Supp. Ex Parte Mot. TRO & Prelim. Inj. at 2; Opp'n Mot. Prelim. Inj. at 5 (May 7, 2025).



2. The ORAC determines the use of funds within the Opioid Recovery Trust Fund ("the Fund"), a continuing fund containing the proceeds received on behalf of Guam relating to manufacture, marketing, distribution, promotion, or dispensing of opioids, whether received by verdict or settlement. 5 GCA § 221702(b).

3. Guam law provides that the OAG, in consultation with the ORAC, shall administer the Fund. 5 GCA § 221702(e). The law further provides that monies in the Fund shall be expended to mitigate the impacts of the opioid epidemic on Guam, including, but not limited to, expanding access to opioid use disorder prevention, intervention, treatment, and recovery options. 5 GCA § 221703.

4. AG Moylan presented the idea of the Dignity Project to the ORAC along with a project prospectus on August 28, 2024. Opp'n Mot. Prelim. Inj. at 4; Ex. B. The prospectus detailed that the Dignity Project would "provide a safe place for an evening so a person can receive a meal, place to shower and sleep, and a morning refreshment" along with access to emergency assistance, access to assistance in finding job opportunities, the assignment of a case and social worker, peer support specialists, transportation services, a hotline, and security services. Ex. B at D12-14.

5. The ORAC voted to approve the Dignity Project and entered a Resolution on August 29, 2024, memorializing this decision. Ex. C at D52. The Resolution stated that "the Council majority voted to approve an award of $1,497,997.22 to the AG's Office for the implementation and execution of program design elements of *The Dignity Project* subject to review of the Request for Proposal by GBHWC, DPHSS, and any willing committee member." *Id.* This resolution made no reference to pursuing a procurement through an IFB or sole source.



6. On September 13, 2024, the OAG issued RFP No. 005-2024, which was eventually amended and canceled on November 26, 2024. Mem. P. & A. in Supp. Ex Parte Mot. TRO & Prelim. Inj. at 4; Opp'n Mot. Prelim. Inj. at 6; Ex. F. One vendor, WestCare, attempted to negotiate the terms of the RFP, however they were unable to meet the "one night" requirement of the program. AG Moylan Test. (May 12, 2025).

7. After the difficulties with the RFP, the OAG decided to remove the professional services from the procurement. *Id.* The OAG decided that it would manage the "administrative services" and would procure a vendor to manage the hotel and meal aspects of the Dignity Project through an IFB. *Id.* On February 7, 2025, the OAG on behalf of the Council and through the General Services Agency (GSA) issued IFB No. GSA-014-25. Mem. P. & A. in Supp. Ex Parte Mot. TRO & Prelim. Inj. at 5; Opp'n Mot. Prelim. Inj. at 7; Ex. G. The IFB solicited hotel lodging and accommodations. Ex. G at D493. No bids were submitted, upon which the IFB was extended for two weeks. Ex. H. Again, no bids were submitted and the IFB was cancelled on Marcy 14, 2025. Ex. I.

8. The OAG then proceeded with a sole source procurement. The OAG contacted at least three potential vendors about providing the hotel lodging and accommodation needs of the Dignity Project. Paulino Test. (May 14, 2025); Nishihara Test. (May 13, 2025); Ex. O at D910. TPH expressed an interest after they were contacted. A contract was then entered between TPH and the OAG for TPH to provide guest room accommodations, common facilities, meals, and security for the Dignity Project for costs not to exceed $1,131,500.00. Ex. K. This contract was signed by AG Moylan,



Chief Deputy AG (CDAG) Joseph A. Guthrie (the AG Certifying Officer), and Deepak Dwan (the general manager of TPH). *Id.* at D548.

9. On or about April 15, 2025, the OAG delivered a copy of the TPH Contract to the Department of Administration (DOA) to complete the requisite contract registration. Mem. P. & A. in Supp. Ex Parte Mot. TRO & Prelim. Inj., Travis Decl., Ex. 2 at 2. On or about April 17, 2025, the DOA refused to process the TPH Contract stating that the contract needed to be signed by Governor Leon Guerrero per 5 GCA § 22601, which provides that "[a]ll contracts shall, after approval of the Attorney General, be submitted to the Governor for his signature. All contracts of whatever nature shall be executed upon the approval of the Governor." *Id.*; 5 GCA § 22601.

10. Because of the DOA's refusal to register the TPH Contract, on April 17, 2025, Paulino inquired with the OAG asking if the Governor is required to sign the TPH Contract. Ex. L at D559. CDAG Guthrie provided a memorandum detailing a legal opinion that stated that the Governor's signature was not required. *Id.* at D567. In the memorandum, CDAG Guthrie stated that the issue had been previously addressed in a July 14, 2004 Legal Opinion from the Guam Memorial Hospital Authority. *Id.* at D560. CDAG Guthrie stated that the ORAC, like the Guam Memorial Hospital Authority was "not under the Governor's direct control." *Id.* He stated that since the contract was a "procurement contract, it need not be signed by the governor." *Id.* at 561. Further, he stated that a sole source purchase order need not be approved by the Governor and "only [by] the head of the purchasing agency." *Id.* at 562.

11. On April 23, 2025, Assistant AG (AAG) Ramiro Orozco sent a letter to the DOA General Accounting Supervisor John Camacho titled "Notice of Violation of Law;


ORIGINAL

Registering Dignity Project Contract; Request to Immediately Cure." Ex. 5. This letter stated that if Camacho did not "immediately accept this contract for processing / registering by 12:00 p.m. tomorrow, April 24, 2025" he would be charged with "official misconduct (4 GCA § 49.90), obstructing government function (9 GCA § 55.45), as well as possibly other applicable crimes." *Id.* at P20. The letter further states that the OAG intended to "also seek personal monetary damages against [him] for the damages that the Council faces pursuant to the before cited criminal statutes." *Id.* at P21.

12. Following receipt of the Notice, Camacho "registered-approved and confirmed" the TPH Contract on April 23, 2025. Mem. P. & A. in Supp. Ex Parte Mot. TRO & Prelim. Inj, Travis Decl, Ex. 6.

13. During the hearing, Paulino detailed his involvement with the Dignity Project through his work as a general accounting supervisor at the OAG. He detailed how he oversaw the sole source procurement process for the Dignity Project. In reviewing if the procurement record met the statutory requirements of 5 GCA § 5214(c) and (d), Paulino stated that the sole source procurement record did not include a report "signed by the person or persons conducting the market research and analysis" and did not include a writing by the "Chief Procurement Officer, the Director of Public Works, the head of a purchasing agency, or a designee of either officer above the level of the Procurement Officer" that determined "that the contract price is fair and reasonable and consistent with applicable regulations." Paulino Test.

14. The day after Paulino's testimony, AG Moylan approved and executed a "Procurement Ratification and Affirmation." Ex. AG. This Ratification stated that



pursuant to 5 GCA § 5452 and 2 GAR § 9106, he "ratified and affirmed the contract dated April 15, 2025 between the Attorney General of Guam and the Tropical Palm Hotel." *Id.* at D1448. This Ratification was legally reviewed and approved by CDAG Guthrie. *Id.* at D1450. AG Moylan testified that upon hearing Paulino's testimony about potential issues with the sole source procurement record he conducted an analysis finding an absence of fraud and balanced the "minor infirmities" in the record with the "good that comes from the project." He determined that the good outweighed the infirmities and ratified the contract. AG Moylan Test. (May 15, 2025).

15. During the hearing, the parties stipulated that under 5 GCA§ 22601, the Governor's signature is required for federal contracts. Prelim. Inj. Hr'g (May 15, 2025).

## III.     **MOTIONS TO DISMISS**

The Court first addresses three of Defendants' four Motions to Dismiss: 1) Motion to Dismiss Pursuant to GRCP Rule 19(a), 2) Motion to Dismiss - Failure to Exhaust Administrative Remedies, Lack of Standing and Lack of Jurisdiction, and 3) Motion to Dismiss - Movant Waived the Right to Object. Defendants generally move for dismissal under Guam Rules of Civil Procedure 12(b)(1), (6), and (7). For motions brought under Rule 12(b)(6), the Court accepts well-pleaded facts as true, construes the pleadings in a light favorable to the plaintiff, and resolves all doubts in the non-movant's favor. *Cruz v. Cruz*, 2023 Guam 20 ¶ 10. Defendants do not offer a standard to view the allegations under a jurisdictional attack under Rule 12(b)(1); thus, the Court applies the general federal standard that a Rule 12(b)(1) motion should be if it appears certain that the plaintiff cannot prove any set of facts entitling him to relief. *See Wagstaff v. U.S. Dept. of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).



### A. Motion to Dismiss Pursuant to GRCP Rule 19(a)

Defendants move to dismiss Governor Leon Guerrero's complaint under Rule 19(a),

which requires joinder of a party

> if (1) in the person's absence complete relief cannot be accorded among those
> already parties, or (2) the person claims an interest relating to the subject of the
> action and is so situated that the disposition of the action in the person's absence
> may (i) as a practical matter impair or impede the person's ability to protect that
> interest or (ii) leave any of the persons already parties subject to a substantial risk
> of incurring double, multiple, or otherwise inconsistent obligations by reason of
> the claimed interest.[2]

Defendants assert that the ORAC is an indispensable party that needs to be joined in this

suit because it authorized the payment of funds for the Dignity Project and has an interest in how

the ORAC Fund is spent.[3] Mot. Dismiss Pursuant GRCP 19(a) at 5 (May 12, 2025). Governor

Leon Guerrero responds that there is no indication that the ORAC was involved in the sole

source procurement process, the ORAC was not a signatory to the TPH Contract, and that the

OAG did not purport to execute the TPH Contract on behalf of the ORAC. Opp'n to Defs' Mot.

Dismiss Pursuant GRCP Rule 19(a) at 4. She argues that the OAG acted of their own volition—

not on behalf of the ORAC, but as a grantee of the ORAC funds. *Id.* The Governor further

states that the ORAC's status as a grantor does not inherently render it a necessary party to this

action and that if the Court grants the Governor her sought relief, it will not affect the ORAC's

rights to fund programs so long as they complied with law. *Id.* at 5-6. Lastly, she argues that if

---

[2] The Court considers this motion under Rule 12(b)(7) for failure to join a party under Rule 19.

[3] As the Court noted at the June 5 hearing, the Motion contained two critical statements later contradicted by the testimony developed after the motion was filed. Contrary to representations in the Motion, the evidence showed that the ORAC was not involved in the sole source process of the procurement or in approving the TPH Contract. It is also not a party to the TPH Contract.

ORIGINAL

the Court determines the ORAC is a necessary party, it may simply order the ORAC to be joined. *Id.* at 6.

Guam law describes the ORAC as a consulting body. *See* 5 GCA § 221702(e). Collectively, its members "determine the allocation or expenditures of the Fund" in accordance with certain statutory criteria to address substance use disorders. 5 GCA §§ 221704(a), (h). Moreover, the law places administration control over the Fund in the hands of the OAG. 5 GCA §§ 221702(d)-(f).

The ORAC law, however, does not expressly require the ORAC's involvement in the projects it approves. This is consistent with the manner in which the services for the Dignity Project were procured. The evidence showed that the ORAC approved the Dignity Project and proceeding with an RFP. Beyond that, there was no evidence that the ORAC was involved in the subsequent decision to issue an IFB once the RFP was canceled. It was not involved or consulted in the succeeding determination to pursue a sole source procurement, nor in any of the efforts used by the OAG to complete the sole source procurement. And finally, the ORAC is not a party to the TPH Contract, which was signed by AG Moylan, the manager of TPH and CDAG Guthrie.

As the administrator of the ORAC Fund, as the creator and developer of the Dignity Project, and as a party to the TPH Contract, the OAG can sufficiently protect the ORAC's interest in the project and expenditure of the ORAC Fund. Moreover, as the Chairperson of the ORAC, Defendant Moylan is positioned to represent the ORAC's interest in this project.[4] Given the OAG and the AG's direct roles in all of the material facts relative to the Dignity Project, and

---

[4] Chairperson Moylan conceded at the June 5 hearing that he has not convened the ORAC to meet about this litigation and the injunction against the Dignity Project.

ORIGINAL

the ORAC's standing as a consulting body and a non-party to the contract at issue, the ORAC is neither necessary nor indispensable. The Court DENIES this Motion to Dismiss.

### B. Motion to Dismiss - Failure to Exhaust Administrative Remedies, Lack of Standing and Lack of Jurisdiction

Defendants next contend that the Court lacks subject matter jurisdiction under Rule 12(b)(1) because Governor Leon Guerrero "failed to file the requisite protest and appeal before the Public Auditor." Mot. Dismiss Failure to Exhaust Admin. Remedies at 3 (May 9, 2025). Further, they assert that the Governor lacks standing because she "is not directly affected by any aspect of ORAC" and that standing does not exist for the Governor because the Guam Legislature provided that the AG is the official to legally review procurements. *Id.* at 4. Governor Leon Guerrero responds that she was not required to exhaust administrative remedies prior to bringing this action as she is not an actual or prospective bidder, offeror or contractor under 5 GCA § 5425. Opp'n Defs.' Mot. Dismiss - Failure to Exhaust Admin. Remedies at 3 (May 29, 2025). The Governor states that her injury stems from the OAG's "violation of the Governor's right and duty to review, approve and/or sign the TPH Contract prior to execution and performance" rather than an injury that stems from agency action that undermined one's opportunity to participate fairly in the procurement process. *Id.* Further, she addresses the OAG's argument that she lacks standing and emphasizes that she has not alleged an injury based on the ORAC's actions and that she has standing due to rights vested in the Governor exclusively through Guam law. *Id.* at 4-5.

Section 5425(a) states that *"any actual or prospective bidder, offeror, or contractor who may be aggrieved* in connection with the method of source selection, solicitation or award of a contract, may protest to the Chief Procurement Officer, the Director of Public Works or the head



of a purchasing agency." (Emphasis added). The Governor, however, is not an actual or prospective bidder, offeror, or contractor. As established, the Governor was not a party to the TPH Contract. The administrative remedy that Defendants contend the Governor has failed to exhaust are in fact not available to her. As such, there is no way for the Governor to have failed to exhaust this administrative remedy.

The Court further disagrees with Defendants' assertion that the Governor lacks standing. Defendants claim that under 5 GCA § 30201 and as reinforced in *A.B. Won Pat Guam Intern. Airport Authority ex rel. Board of Directors v. Moylan*, 2005 Guam 5 ¶ 62,[5] the Legislature empowered the OAG to review procurements. While 5 GCA § 30201 may provide that the OAG is the entity that reviews contracts, the Court does not interpret this to divest the Governor of standing to review contracts subject to the Central Accounting Act (CAA), 5 GCA Ch. 22, as further discussed in subsequent sections of this Decision and Order. Pursuant to the Organic Act, the Governor is vested with executive power and general supervision over departments and agencies within the executive branch. The Governor's standing to challenge actions that interfere with these executive powers is supported by her role in ensuring the proper administration and enforcement of laws within the territory. 48 USC § 1422. The Governor's duties and rights are not somehow diminished because Guam law gives the AG the right to review procurements.

In conclusion, the Governor did not have administrative remedies to exhaust and does not lack standing for the reasons put forth by Defendants. The Court therefore DENIES this motion.

---

[5] Holding that the AG's powers are "subject to increase, alteration, or abridgment by the legislature."



## C. Motion to Dismiss- Movant Waived the Right to Object

Finally, the Court addresses Defendants' Motion to Dismiss on the basis that the

Governor has waived the right to object during the procurement process. Mot. Dismiss Movant

Waived Right to Obj. at 2 (May 9, 2025). Specifically, they argue that five members of the

ORAC were appointed by the Governor or part of the Governor's cabinet and Administration

and through their appointment she affirmatively took action to waive her right to object. *Id.* at 2-

3. Additionally, they argue that she waived through acquiescence by failing to object until three

days before the Dignity Project was set to start. *Id.* at 4.[6]

Governor Leon Guerrero opposes the arguments that she has waived through the

appointment of the ORAC members or through acquiescence. She states that the appointment of

members to the ORAC did not "inherently imbue such individuals with the powers of the

appointing authority" and rather that the powers of these officials "are generally defined by their

respective enabling statutes and related law and regulations. Opp'n Def.'s Mot. Dismiss Re:

Waiver at 3-4 (May 29, 2025). Her arguments center around the idea that the relevant enabling

acts do not delegate her approval of contracts to her appointees, or to the OAG, and she herself

did not impliedly or expressly delegate this authority to the ORAC members. *Id.* at 5.

Additionally, Governor Leon Guerrero argues that she did not acquiesce to execution or

performance of the TPH Contract without her approval. She states that she filed this suit only

---

[6] Defendants additionally argue that the Governor waived her right to object by not following
provisions of the procurement law to challenge procurement. Mot. Dismiss Movant Waived
Right to Obj. at 5. The Court believes this argument was addressed in the Motion to Dismiss-
Failure to Exhaust Administrative Remedies, Lack of Standing and Lack of Jurisdiction.
Defendants additionally argue that the AG is the Chief Procurement Officer under procurement
law, which the Court addresses in its analysis on the likelihood of success of the Governor's
Motion for Preliminary Injunction. *Id.* at 4.

ORIGINAL

two days after Camacho was compelled to approve the TPH Contract under threat of prosecution. *Id.* at 7.

Here, the Court agrees with the Governor. The relevant statutes do not delegate the Governor's approval of contracts to her appointees, and this Court is unconvinced that the Governor delegated this authority to her appointees. The Court also does not believe the Governor acquiesced; she filed this suit promptly after becoming aware of the OAG's communications with Camacho. Therefore, the Court DENIES Defendant's Motion to Dismiss for waiver.

## IV.    THE TEST FOR A PRELIMINARY INJUNCTION

The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the Court's ability to render a meaningful decision on the merits. *Tumon Partner, LLC v. Shin,* 2008 Guam 15 ¶ 22. To succeed in justifying a preliminary injunction, the burden of proof falls on the movant to show (1) a threat of irreparable injury, and (2) a likelihood of succeeding on the merits. *Sananap v. Cyfred, Ltd.,* 2009 Guam 13 ¶ 38. In assessing these factors, the Court views the two as not distinct tests, "but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir. 1988) (quoting *Rodeo Collection, Ltd. V. West Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987).

### A. Likelihood of Success

The Court starts its analysis with providing an overview of the parties' theories of the case. Governor Leon Guerrero presents two issues for the Court to consider: 1) the Governor's signature is required to allow for the execution of the TPH Contract and 2) the OAG failed to follow the proper procedure for undertaking a sole source procurement. Specific to the



requirement for her signature, Governor Leon Guerrero argues that under 5 GCA § 22601 "[a]ll contracts of whatever nature shall be executed upon the approval of the Governor." *Id.* at 4. She argues that the procurement was done in violation of Guam law, and that the TPH Contract cannot be executed until she provides her signature of approval. Specific to the procurement process, Governor Leon Guerrero argues that under 5 GCA § 5113, the Chief Procurement Officer of the GSA, not the AG, was the only entity authorized to procure the services in the TPH Contract. Reply Mem. in Supp. Mot. Prelim. Inj. at 9 (May 12, 2025). She additionally argues that the sole source procurement itself did not comply with the requirements of 5 GCA § 5214. *Id.* at 9-10.

Defendants argue that it was authorized to undertake the sole source procurement process on its own and that the Governor's signature is not required for procurement contracts under 5 GCA § 5121(c). Opp'n Mot. Prelim. Inj. at 12. They argue, however, that any mistakes or violations of law made in approving the TPH Contract have now been cured by the ratification process. Defendants state that they have the authority to ratify and affirm the TPH contract under 5 GCA § 5452 and 2 GARR § 9106 and that upon the OAG's finding of no bad faith or fraud and a determination that the Contract is in the best interest of the Government of Guam, the Contract is ratified and affirmed such that any violations of law regarding the Contract have been cured. Ex. AG.

### 1. The TPH Contract's Violations of Guam Law

Governor Leon Guerrero must demonstrate a likelihood that the TPH Contract violated Guam law, and the ratification failed to cure these violations. The Court starts its analysis by focusing on whether there were violations of Guam law.



### a.     The Role of the Governor's Signature

The parties disagree on whether 5 GCA § 22601 means that the Governor's signature was required in order for the Contract to be approved. Defendants argue that 5 GCA § 22601 is a "general catch-all provision" in Guam law and ask the Court to follow the Compiler's notes on the issue. They further argue that the Court should consider the Guam Legislature's intent under the procurement law which limits review of procurements to the AG for legal form approval under 5 GCA § 5150. *Id.* at 14. The Governor counters that 5 GCA § 22601 applies to "all agencies subject to the Central Accounting Act" and that attempting to exempt "procured contracts" from this requirement would "essentially remove substantially all agency contracts that require the payment of funds through the centralized accounting system from the requirement." In other words, under this interpretation, 5 GCA § 22601 would only apply to contracts where public funds are not expended. Reply Mem. in Supp. Mot. Prelim. Inj. at 4. The Governor argues instead that section 22601 operates in harmony with section 5121 and that the fiscal controls in section 22601 are additive to procurement code requirements for contracts subject to the CAA. *Id.* at 5. She argues that under canons of statutory construction, the two sections are to be read together such that the Chief Procurement Officer executes such contracts under § 5121(c) upon the Governor's approval under section 22601. *Id.*

In examining these statutes, the Court starts with their plain language. *Chargualaf v. Govt' of Guam Ret. Fund,* 2021 Guam 17 ¶ 17. If there appears to be a conflict between the statutory language, the Court "must try to read the apparently conflicting statutes in a harmonious manner" to "ascertain the intent of the legislative body and construe the law accordingly." *In re Leon Guerrero,* 2023 Guam 11 ¶ 38 (quoting *People v. Reselap,* 2022 Guam 2 ¶ 54; *Karlin v. Foust,* 188 F.3d 446, 470 (7th Cir. 1999)). In determining legislative intent, "a



statute should be read as a whole, and therefore, courts should construe each section in conjunction with other sections." *Sumitomo Const., Co., Ltd. v. Government of Guam*, 2001 Guam 23 ¶ 17. The Court "must read the statutes to give effect to each if we can do so while preserving their sense and purpose" such that "no part will be inoperative or superfluous." *In re Leon Guerrero*, 2023 Guam 11 ¶ 52 (quoting *Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)); *In re People*, 2024 Guam 17 ¶ 17 (quoting *People v. Taisacan*, 2023 Guam 19 ¶ 50). It is important for the Court to "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *In re People*, 2024 Guam 17 ¶ 17 (quoting *In re Guardianship of Moylan*, 2021 Guam 15 ¶ 36).

Relative to whether the TPH Contract requires the Governor's signature, the Court considers the context of this specific transaction. What the Court is presented with is a document with the hallmarks of a contract; it is titled "Agreement," has a space for a DOA Contract number, it is fully executed by the contracting parties, and it contains all pertinent terms. In becoming a contract binding the OAG, an entity under the Government of Guam, it appears unavoidable that on its plain terms, section 22601 became applicable. 5 GCA § 22601 ("[a]ll contracts of whatever nature shall be executed upon the approval of the Governor").

In line with other guiding principles of statutory interpretation, the Court considers not just section 22601, but rather how other pertinent statutes apply and harmonize. For example, the Court recognizes some limits on the Governor's access to the ORAC funds, evident by how the Legislature set up the Fund to be "separate and apart from any other funds of the Government of Guam, including the General Fund." 5 GCA § 221702(a). The Legislature ensured that the ORAC Fund was not subject to any transfer authority by the Governor. *Id.* However, the


ORIGINAL

Legislature ensured there were still standard controls over funds received into the Fund, by compelling the OAG to remit funds to the Treasurer of Guam. 5 GCA § 221702(d).

By placing funds under the Treasurer of Guam, the Legislature placed the ORAC subject to the CAA, and the laws thereunder including section 22601 relative to contracts. Again, the CAA and section 22601 dictate that contracts of "whatever nature" must be submitted to the Governor for her signature and approval. Moreover, the Guam Supreme Court recently determined that "agencies subject to the Central Accounting Act must have *all* their contracts approved by the Attorney General as to form and legality" under 5 GCA § 22601, *In re Leon Guerrero*, 2024 Guam 18 ¶ 23, referring to the role of the AG as it pertains to 5 GCA § 22601. But this logic must extend to the Governor's role under this statute. Funds held under the CAA must comply with section 22601 without exception.

Additionally, Defendants acknowledge that the TPH Contract was subject to the requirements of 5 GCA § 22602—a provision the AG himself followed when sending the Contract to DOA for registration. If the Fund is subject to the requirements of the CAA and Chapter 22, even to the point that Defendants accept that the Contract is subject to 5 GCA § 22602, then it is likely subject to the requirements of 5 GCA § 22601.

The Court also considers the nature of the Governor's duty in approving contracts under the CAA. When the Governor exercises an approval under section 22601, she is providing an official pronouncement that the contract is "good" or that the contract has passed her judgment. *See State v. Smith*, 57 P. 499, 451 (Mont. 1899); *Ellison v. Oliver*, 227 S.W. 586, 589 (Ark. 1921); *Huntt v. Gov't of Virgin Islands*, 382 F.2d 38, 46-47 (3d Cir. 1967). This is a substantive rather than a ministerial duty, and in line with her responsibility to ensure the integrity of the centralized financial system and the health of overall government finances. This Court is not



willing to find that her job in approving contracts be reduced to a rubber stamp following an AG contract review.

As a final note, the Court addresses Defendants' urging to follow the Compiler's Notes. Beneath section 22601, the Compiler directs the reader to 5 GCA § 5121 relative to "execution of contracts made pursuant to the Procurement Law." Under section 5121, the Compiler explains that the Legislative Committee on General Governmental Operations "determined that neither the Attorney General nor the Governor should be required to sign procurement contracts. However, since existing law states that all contracts are not executed until signed by the Governor, this Section must state when procurement contracts are executed. If the Attorney General or the Governor wish to review any contracts, this Section will not prohibit it." Defendants point to these two notes as conclusive authority that the Governor does not sign procurement contracts, such as the TPH Contract.

However, as explicitly provided by 1 GCA § 101(a), "Annotations and comments are not part of the law." Since the Compiler's notes are not law, to the extent the notes have any persuasive value, they must also be consistent with the principles of statutory interpretation. But the Court having engaged a plain language analysis and construed the relevant provisions to harmonize as much as possible, and having arrived at a different conclusion than that reached by the Compiler, means the Compiler's notes cannot be adopted in this instance. In other words, how the Compiler construes the interplay of two separate provisions of Title 5 do not supplant a plain meaning statutory analysis, nor the directives of the Guam Supreme Court to harmonize statutes together.



Based on the above statutory analysis, the Court finds that the Governor has illustrated the likelihood of success on the merits in proving that she was deprived of her executive right and duty to approve the TPH Contract.

### b.　Motion to Dismiss for Lack of Jurisdiction

Before turning to the alleged defects in the sole source procurement, the Court briefly addresses Defendants' motion to dismiss this suit for lack of jurisdiction arguing that 1) Governor Leon Guerrero's signature is not required for procurement contracts and requiring so would halt the Government's procurement system and 2) the Governor's request to sign is now moot. They argue that because of mootness there is no longer a case or controversy and as such subject matter jurisdiction does not exist.[7] Mot. Dismiss Lack of Jurisdiction at 1 (May 12, 2025).

Regarding their first argument, Defendants claim that the Guam Legislature neither requires nor mandates that either the AG or the Governor sign the final contract, per 5 GCA § 5121(c). Mot. Dismiss Lack of Jurisdiction at 3. They argue that requiring otherwise "jeopardizes years of procurement contracts entered into, including current procurements, from being deemed as *non-enforceable* allowing private parties to renege, back out and challenge otherwise enforceable contracts that did not include the Governor's signature." *Id.* Regarding their second argument, Defendants state that they have now provided the Governor with an opportunity to sign the TPH Contract which makes equitable relief moot since they have reasonably cured her grievance, and the Court can no longer grant the relief requested. *Id.* at 4-6.

---

[7] Defendants do not state which rule they are moving under, but the Court interprets this argument to mean that they move under GRCP 12(b)(1).

ORIGINAL

The Governor counters arguing that 5 GCA § 5121(c) does not repeal or amend 5 GCA § 22601, which the Court has just discussed. Additionally, she offers an OAG Memo that distinguishes offers from purchase orders.[8] Opp'n Def.'s Mot. Dismiss Lack of Jurisdiction at 4 (May 29, 2025); Decl. Counsel in Supp. Opp'n Defs.' Mot. Dismiss, Ex. 2 at 2 (May 29, 2025). With regards to Defendants' arguments on mootness, the Governor emphasizes that 5 GCA § 22601 requires Defendants to obtain her approval and signature, not just the opportunity for her to approve contracts, and as such her claim is not moot. Opp'n Def.'s Mot. Dismiss Lack of Jurisdiction at 11.

Because it has found that section 22601 applies to the TPH Contract, the Court also finds that the Governor has jurisdiction to file this matter. The Legislature provided the Governor with the power to approve contracts under the CAA; how the Court's determination impacts the processing of procurements does not change its analysis. Moreover, because she refuses to sign the TPH Contract, the matter is not moot. The AG's motion to dismiss based on jurisdiction and mootness is DENIED.

### c.     Sole Source Violations

Turning back to the merits of this action, Governor Leon Guerrero alleges that the TPH Contract fails to comply with sole source procurement requirements enumerated in 5 GCA §

---

[8] The Governor explains that a "purchase order is merely the offer portion of the several elements required to compose a contractual arrangement" and that "a contract arises *after* the vendor's acceptance of the purchase order." *Id.* at 5 (citing *Gulf States Utilities Co. V. NEI Peebles Elec. Prod., Inc*, 819 F. Supp. 538, 549 (M.D. La. 1993)). The Governor further cites the OAG memo that states certain purchases, such as professional services, or, in the case of leases, may require "full-fledged narrative or sometimes multiple pages," must be memorialized in writing if its term exceeds one (1) year, or require "several pages of terms." *Id.* at 7; Decl. Counsel in Supp. Opp'n Defs.' Mot. Dismiss, Ex. 2 at 2. The memo states that in those cases, the documents are effectively a "regular contract which needs to be reviewed by the [OAG] and approved by the Governor." *Id.*; Decl. Counsel in Supp. Opp'n Defs.' Mot. Dismiss, Ex. 2 at 2.



5214. *Id.* at 6. The Governor asserts that the Chief Procurement Officer of the GSA was the only entity authorized to procure the services in the TPH Contract arguing that the procurement was for non-professional services, however, the OAG asserts that there were no violations of Guam procurement law. *Id.* at 13; Opp'n Mot. Prelim. Inj. at 12. The Governor further alleges that even if the AG was authorized to undertake a sole source procurement, the OAG failed to comply with 5 GCA §§ 5141(b) (training requirements), 5214(c) (reporting requirements) and 5214(d) (determination of fair and reasonable price requirements).

The Court starts with whether the AG had the authority to engage in the sole source procurement process. 5 GCA § 5214(a)(1) states that a sole source procurement can be done by the Chief Procurement Officer, the Director of Public Works, the head of a purchasing agency, or a designee of either officer above the level of the Procurement Officer. A purchasing agency is "any governmental body other than the Chief Procurement Officer or the Director of Public Works which is authorized by this Chapter or its implementing regulations, or by way of delegation from the Chief Procurement Officer, to entire into contracts." 5 GCA § 5030(q). 5 GCA § 5121(a) states that

> for the purpose of procuring the services of accountants, physicians, lawyers, dentists, licensed nurses, other licensed health professionals and other professionals, any governmental agency of Guam may act as a purchasing agency and contract on its own behalf for such services, subject to this Chapter and regulations promulgated by the Policy Office, but this Subsection shall not authorize the procuring of such services where any given governmental body is otherwise prohibited from procuring such services.

The AG testified that the "professional services" of the Dignity Project were removed from the sole source procurement, leaving the hotel and meal aspects to be procured. Given that the AG himself stated that professional services were removed from the procurement, the Court finds it unlikely that the AG can be considered a purchasing agency under 5121(a). Thus, without



another statutory authorization or a delegation from the CPO or DPW, the Court finds it unlikely that the AG can be considered a purchasing agency to do a sole source procurement for non-professional services under 5 GCA 5214(a)(1).

The AG also argues that he is the "procurement officer" of the OAG, authorizing him to conduct the procurement as the "Chief Procurement Officer." Opp'n Mot. Prelim. Inj.at 12. However, 5 GCA § 5030(c) which defines the CPO as "the person holding the position created in § 5110 of this Chapter, as the head of the central procurement office of Guam." The Court is unconvinced that the AG meets the definition of the CPO and as such, does not consider the AG as the "procurement officer" to satisfy the requirements of 5 GCA § 5214(a)(1). Given that the AG is not the Chief Procurement Officer, the Director of Public Works, the head of a purchasing agency, or a designee of either officer above the level of the Procurement Officer for the purpose of procuring non-professional goods and services, the AG lacked the authority to conduct the sole source procurement.

Additionally, even if the AG was authorized to conduct the sole source procurement, those involved failed to meet mandatory training requirements. Under 5 GCA § 5141(b), all Government of Guam personnel tasked with the responsibility of purchasing or otherwise procuring goods, or services, or construction are required to undertake specific procurement training requirements. AG Moylan, DAG Nishihara, and Paulino, a general accounting supervisor at the OAG who oversaw the sole source procurement process, all testified that they had not completed the procurement training modules. AG Moylan Test.; Nishihara Test.; Paulino Test. Without meeting the statutes training requirements, these individuals were not permitted to engage in procuring goods or services.

The Court finally turns to the Governor's assertions that the procurement failed to abide



by 5 GCA § 5214(c)[9] and (d).[10] During the evidentiary hearing Paulino stated that the sole source procurement record did not include a report "signed by the person or persons conducting the market research and analysis" and did not include a writing by the "Chief Procurement Officer, the Director of Public Works, the head of a purchasing agency, or a designee of either officer above the level of the Procurement Officer" that determined "that the contract price is fair and reasonable and consistent with applicable regulations." Paulino Test. Even under the OAG's own theory that it was entitled to conduct a sole source procurement, it failed to abide by the requirements of 5 GCA § 5214(c) and (d) and, according to their witness, failed to abide by the requirements of the sole source procurement checklist.[11] Given this testimony, the Court is inclined to find that a violation of Guam procurement law occurred. Accordingly, the Court finds that the Governor has illustrated a likelihood of success on the merits with regards to a failure to abide by Guam procurement law.

---

[9] "Prior to and as a condition of making any determination in writing required under Subsection (a)(1) or (b) of this Section, the purchasing agency shall prepare a written report for the person making such determination, which shall include a detailed analysis of the minimum needs of the government upon which the contract is based, finding from thorough market research, and a conclusion that will certify accurate and complete necessary data to support their recommendation that there is no other source that will satisfy the minimum needs of the government. The report must be signed by the person or persons conducting the market research and analysis, and shall be made part of the procurement record."

[10] "A sole source contract shall not be awarded or executed unless and until the Chief Procurement Officer, the Director of Public Works, the head of a purchasing agency, or a designee of either officer above the level of the Procurement Officer, has determined in writing that the contract price is fair and reasonable and consistent with applicable regulations. Such determination shall include relevant cost and price information from the sole source and comparable or substitute supplies, services, or construction items."

[11] The Court notes that the Governor argues that the checklist relied upon by Defendants is outdated and asserts that the procurement failed to comply with both the outdated and updated requirements. Pl.'s Closing Arg. (June 5, 2025).


ORIGINAL

### d.      Effectiveness of the Ratification

Since Governor Leon Guerrero is likely to prove that there were violations of Guam law, to likely succeed in this case, Governor Leon Guerrero must also demonstrate that the ratification was not effective.

She correctly points out that ratification can only occur post-award. In a pre-award setting, the law restricts remedies to correct a violation of law to cancellation or a revision of the procurement or proposed award. 5 GCA § 5451; *see also* 2 GARR § 9105(b) (for a remedy prior to award "a finding by the Procurement Officer, after consultation with the Attorney General, that the solicitation or proposed award is in violation of law will constitute a cogent and compelling reason to cancel or revise a solicitation or proposed award").[12]

The Governor argues section 5451 applies because the Contract has not been awarded yet because it has not been approved. As such, the Contract must be cancelled or revised. Defendants respond that the Contract has been awarded, and as such the AG is able to ratify the contract in its role as the "head of a Purchasing Agency."

Here, the Court agrees with the Governor. As the Court has found that the Governor has a likelihood of success on its argument that the Contract was not approved, it is only logical that the Contract has thus not yet been awarded. This, combined with the violations of both 5 GCA § 22601 and 5 GCA § 5214, means that the Contract can only be cancelled or revised to comply with Guam law. It is not subject to ratification, and thus the AG's efforts do not cure the violations of Guam law.

---

[12] The GARR is more specific than the procurement law, however the two do not conflict. As such, the Court relies on both the GCA and GARR in conducting its analysis.


ORIGINAL

Even if the Court were to consider the Contract in the post-award setting, the Court does not believe that the AG can be successful in ratification. 5 GCA § 5452 states that "if after an award it is determined that a solicitation or award of a contract is in violation of law, then: (1) if the person awarded the Contract has not acted fraudulently or in bad faith: (A) the contract may be ratified and affirmed, provided it is determined that doing so is in the best interests of Guam." 2 GARR § 9106(a) states that "upon finding after award that a territorial employee has made an unauthorized award of a contract or that a solicitation or contract award is otherwise in violation of law where there is no finding of fraud or bad faith, the Chief Procurement Officer, the Director of Public Works, or the head of a Purchasing Agency may ratify or affirm the contract or terminate it in accordance with this Section after consultation with the Attorney General." The Court has discussed how the AG is not the Chief Procurement Officer and is not the head of a purchasing agency for the procurement of non-professional goods and services. Therefore, the AG is unable to have the authority to ratify or affirm the TPH Contract in accordance with 2 GARR § 9106(a) to cure violations of Guam law.

## 2. Irreparable Injury

The Court has found that Governor Leon Guerrero has demonstrated a likelihood of success based on violations of Guam law. Numerous courts have recognized that the violation of a statute constitutes an irreparable injury for the purposes of preliminary injunctions. *Fleet Nat. Bank v. Burke*, 727 A.2d 823, 829 (Conn. 1998) ("violation of a statute ordinarily presumes irreparable harm warranting injunctive relief"); *Miller v. Gonzalez*, 239 P.3d 163, 176 (Okla. Civ. App. 2010) ("a violation of a state statute is an injury to the State and its citizens, and a continuing violation is an irreparable injury for which injunctive relief is available); *Wyland v. West Shore School Dist.*, 52 A.3d 572, 583 (Pa. Commw. Ct. 2012) ("failure to comply with a


ORIGINAL

statute is sufficiently injurious to constitute irreparable harm); *Public Service Co. of Oklahoma v. Duncan Public Utilities Authority*, 248 P.3d 400, 403 (Okla. Civ. App. 2010) ("violation of a statutory right thus constitutes irreparable harm); *Long Term Care Pharmacy Alliance v. Ferguson*, 260 F.Supp.2d.282, 294 (D. Mass. 2003) ("irreparable harm can be presumed from the statutory violations at issue here"). Based on the sheer fact that the Contract violates Guam law, the Court believes that sufficient irreparable injury will result without a preliminary injunction.

The Court would be remiss not to address the underlying and yet significant other harm at issue—the services provided to Guam's homeless population under the Dignity Project. Defendants urge this Court to balance the harm experienced by that population against the Governor's right and responsibility to sign contracts. Indeed, Mayor Rivera's testimony exposed a slow and dysfunctional approach by the Government of Guam to work with the mayors to address homelessness. She testified that the Dignity Project tackled an immediate need— allowing homeless who are employed the ability to rest and look presentable for, and in turn, keep, their jobs. Importantly, the ORAC's consortium of government and community leaders found these services provided under the Dignity Project worthy of funding.

But the various harms at issue involve not just those suffered by this vulnerable population. The TPH Contract involved an expenditure of over a million dollars—untransferable funds by the Governor but public funds subject to her review, nonetheless. The expenditure of this large sum required a careful and *lawful* procurement and approval, and that just did not occur in this case.

## V.      CONCLUSION AND ORDER

The Court DENIES Defendants' Motions to Dismiss under GRCP 12(b)(1), (6), and (7). Additionally, the Court finds that Governor Leon Guerrero has established a likelihood of


ORIGINAL

success on the merits and an irreparable injury based on the record before it and thus GRANTS her Motion for Preliminary Injunction. A Status Hearing to discuss further scheduling in this case will be held on July 23, 2025, at 3:00 p.m.[13]

## VI.  **PRELIMINARY INJUNCTION**

Until further Order of the Court, Defendants Douglas B. Moylan and the Office of the Attorney General of Guam, their agents, servants, employees, assigns and attorneys are restrained and enjoined from taking any action to perform on, incur debt on, or utilize public funds to pay for services rendered under the Agreement between the Office of the Attorney General and Tropical Palm Hotel for services including the provision of guest room accommodations and common facilities, meals, and security services, purportedly executed by Defendant Douglas B. Moylan, Attorney General of Guam, on behalf of the Office of the Attorney General on April 15, 2025.

**SO ORDERED, 9 June 2025.**

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Leslie A. Travis, Esq., & Jeffrey A. Moots, Esq., Office of the Governor of Guam, for Plaintiff, Honorable Lourdes A. Leon Guerrero, Governor of Guam
Douglas B. Moylan, Attorney General of Guam, AAG Ramiro Orozco, Esq., & AAG Lucas Wood, Esq., for Defendants Douglas B. Moylan & The Office of the Attorney General of Guam

---

[13] To attend or to participate in the hearing, you may appear in person or remotely at https://guamcourts-org.zoom.us and enter Meeting ID: 864 4387 2213, Passcode: JEMI.

